## MOREHEAD et al. v. GREENVILLE EXCH. NAT. BANK. (No. 2584.)*

(Court of Civil Appeals of Texas. Texarkana. June 8, 1922. Rehearing Denied July 1, 1922.)

1. **Joint-stock companies and business trusts** ⊜⇒15(1)—**To create trust exempting beneficiaries from debts created by trustee, he must have exclusive title and control.**

To create a trust which exempts the beneficial owners from liability for debts contracted by the trustee in his official capacity, the trustee must have the legal title and the exclusive right of control and management of the trust property.

2. **Joint-stock companies and business trusts** ⊜⇒15(1)—**Beneficiary having power to control trustee's acts responsible to creditors.**

If the beneficiary has power directly or indirectly to control the conduct of the trustee by arbitrarily altering the conditions of the trust or the manner of its performance, the business is legally so much within the beneficiary's control as to make him responsible to creditors with whom the trustee contracts.

3. **Principal and agent** ⊜⇒116(1)—**Limitation on agent's authority not binding on third persons dealing with agent without notice.**

The limitations on the power of an agent cannot bind those who, without notice, deal with the agent when the latter is contracting within the real or apparent scope of his authority for the benefit of his principal.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by the Greenville Exchange National Bank against the North Texas Oil & Refining Company, Limited, and others. From

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted October 25, 1922.

judgment for plaintiff, defendants L. M. Morehead, H. H. Cobb, John C. Barrow, and A. P. Weyrich appeal. Affirmed.

Neyland & Neyland, of Greenville, and C. S. Arnold, of Fort Worth, for appellants.

Clark & Sweeton, of Greenville, for appellee.

HODGES, J. This suit was instituted by the appellee to recover the sum of $2,281.26, together with interest and attorney's fees due upon a promissory note. The defendants named in the plaintiff's amended original petition are the North Texas Oil & Refining Company, Limited, F. M. Newton, H. H. Cobb, L. M. Morehead, Mrs. N. B. Teague, John C. Barrow, A. P. Weyrich, and Geo. S. McGhee. The North Texas Oil & Refining Company, Limited, is described as a joint-stock association having a large number of members, among them being F. M. Newton, president, and the other defendants, residing in different counties in the state. Judgment is asked against the North Texas Oil & Refining Company and each of the defendants. The individuals named as defendants answered by special and general demurrer, and also denied under oath any copartnership between them. In a trial before the court a personal judgment was rendered against the North Texas Oil & Refining Company, Limited, F. M. Newton, H. H. Cobb, L. M. Morehead, John C. Barrow, and A. P. Weyrich for the amount sued for. All of these except the North Texas Oil & Refining Company and F. M. Newton have appealed.

The following is, in substance, the findings of fact filed by the trial judge:

(1) The North Texas Oil & Refining Company, Limited, is an unincorporated joint-stock association organized and carried on for the mutual profit of its members. It was organized in October, 1917, under and by virtue of the provisions of two documents; one called a "declaration of trust," and the other "articles of agreement." Both of those are attached as exhibits to the findings. The association is the owner of a refining plant in the city of Greenville, and at the time mentioned was engaged in refining petroleum and selling gasoline and other products of petroleum. It owns warehouses and distributing stations in San Antonio, Houston, and other places in the state of Texas.

(2) The trustees of the association were F. M. Newton, Geo. S. McGhee, and L. M. Morehead. F. M. Newton was the president, and as such had authority to act generally for the company in the transaction of its business, including the execution of the note sued on.

(3) All the defendants mentioned including Weyrich and Barrow, were shareholders and members of the North Texas Oil & Refining Company at the time it became liable for the indebtedness sued on and for a long time prior to that date. There are many other shareholders of the association, who are not parties to the suit and who are also liable for this indebtedness. Among them are C. B. Jones, active vice president of the plaintiff bank at the time the indebtedness alleged was created, and who at that time held one of the certificates showing his interest in the company. However, Jones did not handle the transactions which culminated in the execution of this note, and knew nothing of its existence. The note was executed by the defendant company as "North Texas Oil & Refining Company" (omitting the word "Limited") and F. M. Newton. A copy of the note is attached to the exhibit.

(4) In the transactions of the business of the company and in signing its name generally its president, F. M. Newton, signed its name "North Texas Oil & Refining Company," omitting the word "Limited." In the drawing of drafts upon which this indebtedness was based there was no attempt to limit the liability of any of the shareholders and members of the defendant North Texas Oil & Refining Company, and it was not proven that the plaintiff had notice that there was any provision in any of the organization papers of the company limiting the liability of the shareholders and members.

From the foregoing and other facts, omitted as immaterial, the court concluded that the plaintiff was entitled to judgment against the North Texas Oil & Refining Company and Newton as makers of the note sued on, and it was also entitled to judgment against the other defendants as shareholders and members of the company. It was directed, however, that no execution should issue against the individual shareholders until an execution against the joint property had been returned without satisfaction.

The instruments referred to in the findings are too lengthy to be here copied in full. The following is a condensed statement of the "Declaration of Trust," taken from the brief of the appellants:

"(1) An admission on the part of the trustees that they hold the property in trust for the benefit of the shareholders, as joint tenants and not as tenants in common and not as a partnership; and declare that a trust and not a partnership is created, and that the shareholders shall not be deemed or held liable as partners.

"(2) Shareholders shall have no legal right to the property, nor to call for partition or a dissolution of the trust; the shares to be personal property, carrying the right of division of profits and principal at the termination of the trust.

"(3) That the death, insolvency or bankruptcy of a shareholder, or the transfer of his interest shall not operate as a dissolution of the company or terminate the trust.

"(4) That the trustees shall have power to do all things, which in their judgment is necessary, and are authorized to engage in the lines of business for which the company is formed and as here enumerated.

"(5) That the trustees shall not have power to bind the shareholders personally.

"(6) That property acquired by deed shall be conveyed to trustees as such, and held subject to this declaration of trust.

"(7) The company to sue and be sued in company name.

"(8) That at a meeting of the shareholders they may instruct the trustees in any matter not inconsistent with articles of association and it shall be the duty of the trustees to obey such instructions."

The articles of association are in accord with the foregoing provisions, and need not be referred to in detail.

It is contended in this appeal (1) that those instruments disclose the existence of a trust which exempts the shareholders from personal liability for the debts of the company; and (2) that the findings of fact filed by the trial court show that the appellee bank had notice of the existence of the limitation placed upon the liability of the shareholders for the debts of the company.

If it is correct to say that the legal effect of the writings referred to as the "declaration of trust" and the "articles of association" was the formation of a common-law trust, then the appellants are not liable for this indebtedness, and the judgment should be reversed. On the other hand, if the legal effect of those instruments was to create only a joint-stock company, a form of partnership, as concluded by the court, the judgment should be affirmed. The controlling question, then, must be determined by a construction of those instruments.

[1, 2] From the authorities consulted and hereafter referred to it seems that in order to create a trust which exempts the beneficial owners of the property from liability for the debts contracted by the trustee in his official capacity, the latter must have the legal title and the exclusive right of control and management of the trust property for a term, or for the accomplishment of a definite purpose. It must be made to appear that during that time the cestui que trust can exercise no power over the property except to receive the benefits and insist upon the execution of the trust agreement according to its terms. Williams v. Milton, 215 Mass. 1, 102 N. E. 355; Home Lbr. Co. v. Hopkins, 107 Kan. 153, 190 Pac. 601; Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935; Industrial Lbr. Co. v. Texas Pine Land Ass'n, 31 Tex. Civ. App. 375, 72 S. W. 878; Sergeant v. Goldsmith, 110 Tex. 482, 221 S. W. 259, 10 A. L. R. 742; Wrightington on Unincorporated Associations, pp. 40–61; 20 R. C. L. pp. 1077, 1078. If the beneficiary or cestui que trust, has the power, directly or indirectly, to control the conduct of the trustee by arbitrarily altering the conditions of the trust or the manner of its performance, the business enterprise is legally so much within the control of the beneficiary as to make him responsible to the creditors with whom the trustee officially contracts. In such instances the person denominated "trustee" is in fact only an agent acting under the dominion of a principal. In this case what is called the "declaration of trust" was executed by the trustees alone. It begins with this statement:

"Now, therefore, know all men by these presents: That we hereby for ourselves and for our successors under this trust hereby declare that we and they hold all the property, real and personal or of any other species conveyed, granted and any way coming to us, as trustees of North Texas Oil & Refining Company, Limited, *subject to the articles of association and by the by-laws now in force or hereafter to be adopted by said company* upon the following trust and with the following powers," etc.

Then follows a specific enumeration of the powers and of the conditions upon which the property is held. Subdivision 6 of the declaration is as follows:

"The trustees shall, by a vote of a majority of the board, have power to do all things which in their judgment is necessary and prudent in the management and conduct of the business of the company as defined in the articles of agreement of the association, and they are hereby authorized to engage in the following business."

Then follows a detailed statement of the particular character of the business for which the alleged trust was formed. Subdivision 8 provides:

"At a meeting of the shareholders at which a majority of the shares are present or represented, *they may by a vote of the holders of a majority of the shares present instruct the trustees in any matter not inconsistent with the articles of association, and it shall be the duty of the trustees to obey such instruction;* but except as otherwise instructed the trustees shall exercise the powers and authority indicated."

The "Articles of Association" appear to be an agreement between the shareholders and the trustees. In them are provisions which confer upon the trustees the exclusive authority to manage and control the business of the company and the property placed in their hands. There is also a limitation on the power of the trustees to make any contracts binding upon the individual shareholders. Section 11 is as follows:

"*The trustees shall be governed absolutely by the by-laws and amendments thereto to be adopted by the shareholders of the association,* but the trustees shall have and exercise all powers in such manner as they may see proper, *except as specifically or by necessary implication withheld or directed by such by-laws and amendments.*"

In section 13 of the same article it is provided that the records kept by the trustees

shall be open to the inspection of the shareholders, and the latter may cause the books of the company to be audited at least once a year. Article 9 is as follows:

"This agreement is subject at all time to amendment in respect to the powers of the trustees, the purpose of the organization, the amount of capital stock, the number of shares, or in any other respect except as pertains to the unalterable exemption from personal liability of the trustees, officials and shareholders, with the consent of the holders of not less than two-thirds of the shares of stock outstanding, such consent to be expressed by resolution at a meeting called for the purpose after not less than twenty days' notice of such meeting has been given in compliance with the terms of section 5 of article 4 hereof; and upon adoption of such amendment the same shall be duly certified by the trustees and the officers of the company, to be effective from the date fixed by such amendment," etc.

It will be seen from the foregoing that the trustees are not endowed with the supreme authority for controlling the business which they are to conduct. That they are subject to the direction of the beneficiaries, or shareholders, is too plain for argument. The articles of association may be amended at any time, and there is no restriction on the character of the amendments that may be made. By a provision not quoted the association may be changed, when the shareholders so determine, from a voluntary association into a corporation. These articles, while possessing many of the elements of the common-law trust, are no more than the temporary delegation of partial authority to a group of agents denominated "trustees." The trustees are made subject at all times to by-laws adopted and to be thereafter adopted by the concurrent action of the shareholders at a meeting held for that purpose. This implies that the shareholders are to act together as a body, and there is no apparent limit upon what they may do when thus assembled.

[3] It is true that both the declaration of trust and the articles of association contain express restrictions upon the power of the trustees to make any contract imposing a personal liability upon the individual shareholders. But conceding the right of a principal to thus limit the power of the agent, such a limitation cannot bind those who without notice deal with the agent, when the latter is contracting within the real or the apparent scope of his authority and for the benefit of the principal. 1 Cook on Corporations, § 216. The findings of the court are, in effect, that the bank in this instance had no notice of any limitation upon the power of the trustees to so bind the members or shareholders of this concern.

We conclude that the judgment should be affirmed.