### ALLEGHENY TANK CAR CO. v. CULBERTSON et al.

(District Court, N. D. Texas, at Wichita Falls. April 11, 1923.)

No. 150.

Trusts ⬠210—Trustees are personally liable on contracts made on behalf of trust estate.

Trustees are not agents, and, having no principal, are personally liable on contracts made in the name and on behalf of the trust estate, unless it is otherwise stipulated in the contract, and the fact that the declaration of trust, of record, otherwise provides, does not alter such liability.

At Law, Action by the Allegheny Tank Car Company against J. G. Culbertson and others. Judgment for plaintiff.

Weeks, Morrow, Francis & King, of Wichita Falls, Tex., for plaintiff.

Mathis & Caldwell, Joseph H. Aynesworth, and William R. Watkins, all of Wichita Falls, Tex., for defendants.

ATWELL, District Judge. The plaintiff, a Pennsylvania corporation, sues the defendants, residents of the Northern district of Texas, on a written contract made between it and the Uniform Gasoline & Petroleum Company for the rental on certain tank cars. The contract was in writing and provided that it is to be interpreted according to the laws of the state of Pennsylvania, and is signed by the plaintiff, through its president and secretary, and by the Uniform Gasoline & Petroleum Company, by its president, J. G. Culbertson, and its secretary, W. H. Stoecker.

A jury was waived, and the cause was tried to the court upon an agreed statement of facts, providing as follows:

"The Allegheny Tank Car Company is a corporation created under and by virtue of the laws of the state of Delaware. The Uniform Gasoline & Petroleum Company is a common-law trust estate, created and organized under and by virtue of certain articles of agreement recorded in volume 141, page 345 of the Deed Records of Wichita county, Texas, a copy of which articles of agreement and declaration of trust are hereto attached and marked Exhibit A.

"On the 4th of August, 1920, the Allegheny Tank Car Company and the Uniform Gasoline & Petroleum Company entered into a certain written contract and agreement, a copy of which is hereto attached and marked Exhibit B. On December 14, 1920, said written contract, marked Exhibit B, was modified by written agreement made and entered into between the Allegheny Tank Car Company and the Uniform Gasoline & Petroleum Company, as per contract attached hereto and marked Exhibit C.

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Under the aforesaid written contracts the Uniform Gasoline & Petroleum Company became indebted to the Allegheny Tank Car Company in the sum of $27,936.02, as per account hereto attached and marked Exhibit D, less such audits as may be submitted by T. B. Smock either by payment or mileage.

"On March 1, 1923, the Allegheny Tank Car Company repossessed itself of the cars rented to the Uniform Gasoline & Petroleum Company under the aforesaid contracts, and the account above referred to represents accrual rentals due under said contract less credits for mileage.

"J. G. Culbertson, T. B. Smock, James McCauley, and J. H. Stoecker are residents of Wichita Falls, Wichita county, Texas, and are four of the five acting trustees of the Uniform Gasoline & Petroleum Company, and were such trustees prior to the time that the aforesaid written contracts were entered into between the Allegheny Tank Car Company and the Uniform Gasoline & Petroleum Company.

"The remaining trustee of said company, J. A. Swaton, is no longer active, and has not been for some time prior to the filing of this suit, and now resides in the state of California.

"J. G. Culbertson, T. B. Smock, James McCauley, and J. H. Stoecker, approved the above-mentioned contracts and authorized their signature, in behalf of the Uniform Gasoline & Petroleum Company, by its officers, J. G. Culbertson, as president, and J. H. Stoecker, as secretary.

"As trustees said parties had complete charge and control of the business conducted under the above-mentioned articles of agreement, and owned all but approximately $10,000 of the stock of the Uniform Gasoline & Petroleum Company, and were entitled to the benefits accruing thereto. The business of refining and marketing crude oil and its products was carried on by the trustees in the name of the Uniform Gasoline & Petroleum Company.

"At the time of making the contracts attached as exhibits or prior thereto, the Allegheny Tank Car Company did not investigate the nature of the organization of the Uniform Gasoline & Petroleum Company, and had no actual knowledge of the provisions contained in the above-mentioned articles of association."

The declaration of trust referred to in the agreed statement of facts was recorded in the office of the county clerk of Wichita county, Tex., prior to and at the time of the making of the written contract between the plaintiff and defendant. It is what is known as a common-law trust, with the usual details, and covers about 10 pages in length. The following excerpts are quoted:

"This trust declaration, made this 18th day of September, A. D. 1919, by J. G. Culbertson, C. J. Coyne, T. B. Smock, J. A. Swaton, and W. H. Stoecker, for themselves and their successors in this trust, witnesseth:

"The property hereinafter described, being the property described in conveyance of this date executed by James McCauley, G. S. Brenneman, H. L. McGregor, G. C. Works, C. A. Fleming, and George Fleming, as grantors, to J. G. Culbertson, C. J. Coyne, T. B. Smock, J. A. Swaton, and W. H. Stoecker, grantees, as trustees, and to their successors as trustees, together with future additions and accretions to the same, is and shall continue to be a trust estate, to be owned and held by declarants herein and their successors as trustees. The trust estate shall be known for convenience, as 'Uniform Gasoline & Petroleum Company.'

"(2) The term 'trustees,' as used herein, signifies all trustees, whether originals or successors, acting at any given time, regardless of their number. The terms 'trust estate' and 'property of the trust estate,' as used herein, signify the property held by the trustees hereunder at any given time. The term 'beneficiary,' 'shareholder,' or 'beneficiaries,' as used herein, signify the cestui que trust or cestuis que trust holding any unit or units of interest or ownership in the trust at any given time. * * *

"(4) The trust estate shall be titled in and administered at all times by trustees for the uses and purposes, with the powers and duties and subject to the terms of this instrument. The title of trustees shall comprise and

include not only the interests and estates conveyed to them by James Mc-Cauley, G. S. Brenneman, H. L. McGregor, G. C. Works, C. A. Fleming, and George Fleming, but also the titles and estates in said properties heretofore individually owned by declarants as associates in ownership of said properties, and hereby they do subject to this instrument all such individual titles and estates, and do recognize themselves as holding such titles and estate as trustees, and not as individuals. Full legal title being vested solely in the trustees as such, no beneficiaries as such shall ever have any title to the trust estate or any part thereof. Beneficiaries as such shall have right only in and to their respective pro rata of earnings, as and when earnings are distributed by trustees in the court of their administration and their respective pro rata of corpus as and when corpus is distributed by trustees in the course of their administration and at the termination of this trust. The principal office of trustees for administration of the trust estate and the principal office of the trust estate shall be at Wichita Falls, in Wichita county, Texas.

"(5) Neither, beneficiaries nor trustees shall bear any agency, privity, or other relationship, among themselves or to others as partners, associates, coprincipals or otherwise, by virtue of this instrument, or by virtue of any contract, express or implied, made or to be made by trustees or any one else, for the use or on behalf of the trust estate, or upon account of any tort committed by trustees or any one else for the trust estate, or by or on behalf or for the use of the same. The property of the trust estate alone shall be responsible for any such obligations, and any persons, firm, or corporation dealing with trustees, or with or on account of the trust estate, or with any person, firm, or corporation acting on behalf of trustees or the trust estate, or for the use of either or any such persons or interest, shall look only to the property of the trust estate for performance of any contract or satisfaction of any liability for the payment of any damage, and if trustees or any one or more of same shall be adjudged to be liable personally upon any such obligation, the property of the trust estate shall be used so far as necessary to protect or indemnify such trustee or trustees against loss, cost, or expense. However, such trustee shall be liable to the trust estate for, but only for, his own individual, willful, and corrupt breach of trust, and for any such breach of trust he shall not be entitled to indemnification from the trust estate.

"(6) Trustees shall have full and unrestricted power and discretion at all times to improve, prospect, develop, operate, sell, mortgage, or otherwise charge or dispose of any and all corpus constituting the trust estate, and to distribute unsold corpus or proceeds of sold corpus, and to accept, acquire, and make part of the trust estate any other rights, properties or estates of any character and for such considerations as they may deem proper. They shall distribute all net profits accruing from the sale of oil and gas, rents, and other operations of the trust estate periodically, at reasonable regular intervals not more than twelve months apart. They shall have all the rights and powers respecting the property of the trust estate that they would have if they were transacting their own business and were administering an estate belonging to themselves alone.

"(7) Trustees shall not become and remain less than five in number. In case of the death, resignation, incapacity, refusal to act, or removal of any trustee or trustees, all of the titles, rights, estates, powers and duties theretofore vested in or held by trustees named herein shall survive to and automatically become vested in and be held and possessed by the remaining trustee or trustees, and in successor trustee or trustees, as and when they are chosen and accept the trust; but in case of any such vacancy reducing the number of trustees below five, the remaining trustee or trustees shall, by deed forthwith designate a successor or successors for those whose places shall have become vacant, and upon acceptance of any such new trustee or trustees (to be evidenced by deed of acceptance), all of the titles, rights, estates, powers, and duties, theretofore vested in or held by the original trustees, shall devolve upon and vest in the remaining trustee or trustees, as if they were originally named herein.

"(8) Trustees may formulate and prescribe rules and regulations, not inconsistent with this instrument, for administering the trust estate. They shall constitute from their number such officers as they may deem necessary or expedient. Such officers, representatives, agents, and attorneys shall have such powers and shall perform such duties as may be devolved upon them by the trustees, and the acts of such officers performed within the scope of the authority conferred upon them by trustees shall, for all purposes, be considered the acts of the trustees and shall bind the trust estate. A majority of the trustees at any given time, acting together, may exercise any right or power conferred upon or vested in trustees by this instrument, whether or not a vacancy or vacancies may exist in their number. Trustees may compensate themselves, or any of themselves, for services rendered to the trust estate, whether as trustees, officers, agents, attorneys, or other representatives, in such amounts as trustees may fix and determine.

"(9) For convenience only, a nominal valuation has been placed upon the trust estate, as it is now constituted, of $65,000, and 650 units of interest or ownership are hereby authorized; each unit to be of the nominal face value of $100. Such designated valuation and any further valuations upon the trust estate, or any part of same, are not intended to constitute declarations, limitations, or enlargements of actual value. The trustees are authorized to enlarge the trust estate by additions and accretions to same in money or in property and in such other ways as they may deem proper, and to issue additional units of interest or ownership for such property to the persons entitled to receive such units. * * *

"(11) The trust created by this instrument shall continue for full term of the life of the last surviving original trustee now executing this instrument, and for twenty years thereafter, unless sooner terminated pursuant to the terms of this instrument."

This suit is brought against trustees, and defendants Culbertson, Smock, McCauley, and Stoecker, individually and not as trustees; nor is there any action against nor relief sought from the trust estate. The defendants claim that they are not, and cannot in law be held, liable personally, because the plaintiff was bound to discover that they acted as trustees from the deed of trust which was filed and recorded in the county clerk's office of Wichita county, Tex.; that it contracted at its own peril and was charged with notice of the terms of said instrument, and that there is read into the written contract made by it with the officers of the trust an exemption of the defendants personally from any liability by reason of said contract.

In substantiation of this position they maintain that, while there are certain well-known liabilities against trustees personally, this is not a case out of which such liability arises. (a) Trustee is liable if he incurs an indebtedness when he has no authority to do so. (b) He becomes liable if he incurs an indebtedness on the credit of the estate, and has misappropriated or mismanaged the trust property. (c) Also when he contracts with authority on the credit of the estate, but fails to limit his liability by express provisions in the contract itself. (d) Likewise, when he has authority to contract on the credit of the estate, and has in addition contracted in his individual name for the benefit of the estate he is liable. (e) As he is when he has been guilty of fraud.

The statement of these grounds seems to include the identical liability herein urged. It is declared by the defendants that persons dealing with a trustee are bound at their peril to know the nature and extent of the authority of the trustee. They are referred to the instrument

creating the trust, and that, when a trust limits the liability of the trustee, such limitations actually circumscribe the authority of the trustee in the exercise of his power. In other words, to state the proposition briefly, it is contended that an agent is rarely given power, but that he is given authority which results in giving him the privilege of exercising power, while a trustee is seldom given authority, but is universally given power; that to a large extent the privilege of exercising his power is discretionary; that therefore one who deals with a trustee is put to inquiry to ascertain his power, to discover its fundamental source, and to conclude therefrom whether the proposed exercise of power is warranted.

It is also contended by the defendants that the courts are too critical of the attempts made by the business world to institute a new method of doing business; that the courts should not so scrutinize because the conscience of the chancellor is sufficiently powerful to search deeply the conscience of the parties and devise relief for any wrong that any new business device in the trust world may originate; and that no new method of doing ill can escape the chancellor's decree.

While the arguments are ingenious and interesting, they do not raise any question that is without determinative precedents. As early as 1884, the Supreme Court of the United States, in Taylor v. Mayo, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, held:

"A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of the trustee, or any other name or office or employment, will not discharge him."

In the same case the court further said:

"If a trustee, contracting for the benefit of a trust, wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate."

See, also, Norton v. Phelps, 105 U. S. 393, 26 L. Ed. 1072.

The Supreme Court of Texas, in the case of Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935, in 1891, said:

"That such trustees should be held personally liable is reasonable, because they have in their own hands the means wherewith to reimburse themselves, and should not assume a debt for the benefit of an estate of which they have sole management and control without prospect of funds for payment thereof."

Purchases by trustees, when made in obedience to the trust imposed upon them, create personal liability against the trustees so buying and doing business. Although a seller may know that the buyer is conducting the business of which he has the control and management as trustee for the benefit of persons mentioned in the trust, yet nevertheless goods charged to such trustee, so conducting such business per-

sonally, is a correct charge, since he is personally liable to the seller for the price thereof, and it is not necessary to establish the account as a debt against the trust estate. See, also, Head v. Porter (Tex. Civ. App.) 240 S. W. 685; Fisher v. McCoy (Tex. Civ. App.) 202 S. W. 343; Sergeant v. Goldsmith, 110 Tex. 482, 221 S. W. 261, 10 A. L. R. 742; Wells v. Mackay Telegraph Co. (Tex. Civ. App.) 239 S. W. 1001; Morehead v. Greenville Bank (Tex. Civ. App.) 243 S. W. 546; Hussey v. Arnold, 185 Mass. 202, 70 N. E. 87; Roger Bank v. Groton Mfg. Co., 16 R. I. 504, 17 Atl. 170; Mitchell v. Whitlock, 121 N. C. 166, 28 S. E. 292; Fay v. Day, 106 Neb. 370, 183 N. W. 565; Boyle v. Rider, 136 Md. 286, 110 Atl. 524; Feldman v. Preston, 194 Mich. 352, 160 N. W. 655; Elliott on Contracts, § 511; Sears' Trust Estates (1921) p. 32; Hill on Trustees (4th Am. Ed. 1867) 534; note Johnson v. Leman, 19 Am. St. Rep. 67.

It is contended by the defendants that there can be no distinction between the express mention of the declaration of trust in the contract itself and the knowledge of the trustee's power, which is fixed by the instrument, and with which the person who contracts with the trustee, as such, must be and is in fact charged, and they cite as authorities the cases of Bank v. Eaton (C. C.) 100 Fed. 8; Perry on Trust, vol. 2, p. 1313, note A; White v. New Orleans (C. C. A.) 269 Fed. 937. But it is not thought that those authorities support the defendants' contention. The authorities and reasoning of the wisdom that rules this case turn our minds unmistakably to the direction of liability for all trustees who do not stipulate in the contract itself that there shall be no personal liability as to them.

The defendants have pleaded the case of Prinz v. Lucas, 210 Pa. 620, 60 Atl. 309, as determinative of their liability, since the contract sued upon contains the stipulation that it was to be interpreted by the laws of Pennsylvania. The Supreme Court of Pennsylvania, in Prinz v. Lucas, merely determined that the trust estate was liable for a tort committed by a servant of the trustee. The report of the case does not show, but it may be assumed, that the beneficiaries of the trust estate in that case sought to save the estate from such liability by claiming that the servant who committed the tort merely hatched a personal liability for the trustee. The case does not determine the question at issue, nor is it an expression out of line with the principle here exposed. An action would lie here against the trust estate, but the creditor chose to assert his claim only against the trustees personally, and he has such right.

As to the interpretation of the contract there is no reason therefor; there is no ambiguity therein; there is nothing to be construed. The question before the court is not one which would bring into action the law of the place of contract, even were the law of that place to differ from the law of the place of the forum.

The plaintiff may prepare a decree for the amount sued for.