# WILLIAM A. MORGART *vs.* THOMAS F. SMOUSE.

*Bill by One Partner for Account of Profits Derived from Purchase and Sale of Land—Question of Fact.*

Plaintiff's bill in this case alleged that he and the defendant made an oral agreement to purchase and sell certain land and to purchase and sell timber and coal on other land and to share equally the profits and losses resulting from the transactions; that the lands were purchased and sold at a profit, the money having been received by the defendant; that the plaintiff and defendant were partners as to these

transactions; that the defendant had failed and refused to account with the plaintiff or to pay him the share of the profits to which he was entitled. The answer of the defendant denied all the material averments of the bill. *Held,* upon an examination of the evidence that the plaintiff and defendant were partners as alleged in the bill, and that the plaintiff is entitled to one-half of the profits proved to have been derived from the sales of the land, less the reasonable expenses incurred by the defendant in effecting such sales,

*Decided February 25th, 1910.*

Appeal from the Circuit Court for Allegany County (KEEDY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Ferdinand Williams* (with whom was *De Warren H. Reynolds* on the brief), for the appellant.

*Thomas J. Peddicord* (with whom was *D. James Blackiston* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

Thomas F. Smouse, the appellee on this record, sued William A. Morgart, the appellant, in the Circuit Court for Allegany County in an action of *assumpsit* to recover what he claimed to be his share of the profits realized from the sale of certain real estate in Garrett County, Maryland. The case was tried before the Court without the intervention of a jury, and resulted in a judgment for the plaintiff for the precise amount stated in the decree from which this appeal was taken. Substantially the same evidence was offered in that case as in this in support of the plaintiff's claim. On the former appeal, the case of *Morgart* v. *Smouse,* 103 Md. 463, this Court accepted for the purposes of the opinion the

plaintiff's version of the contract, and decided that *quoad* the undertaking covered by it the parties thereto were partners, and that since it appeared there had been no settlement or accounts stated between them the suit at law could not be maintained, and for that reason the judgment was reversed without awarding a new trial.

The law applicable to the issues presented on this record is stated in the opinion in the former case. JUDGE SCHMUKER, speaking for the Court, said: "If on the other hand we treat the contract between the plaintiff and Morgart as an agreement made by them to purchase, develop and sell the lands for their joint account and to share equally in the profits and losses of the venture, the Statute of Frauds was not applicable to it, but it constituted them co-partners *quoad* the undertaking covered by it. The requisites of a co-partnership have been stated in the text books and cases in various forms of expression which substantially agree that the essential requisites to constitute the relation is a community of interest between the parties for the purpose of profit. Ordinarily the profits are expected to arise from the purchase and sale of some form of property, but they may be produced by the skill and industry of the parties as in the case of professional firms or those for the organization or promotion of various enterprises. *Parsons on Partnership,* secs. 58-61; *Lindley on Partnership,* pages 10-14; *Rowland* v. *Long,* 45 Md. 439; *Heise* v. *Barth,* 40 Md. 267; *A. & E. Encyc. of Law,* 2 Ed., Vol. 22, page 27.

"As between the parties partnership is a matter of intention to be proved by their express agreement or inferred by their acts and conduct. If they intend to and do enter into such a contract as in the eye of the law constitutes a partnership they thereby become partners whether they are designated as such or not in the contract * * *. It has been repeatedly held in different jurisdictions that an agreement by two or more persons to buy land and sell it and share either in the profits or the profits and losses constitutes them part-

ners for that venture and entitles either of them to an accounting in equity from the others of the joint transactions."

. After the decision in that case, the appellee filed the present bill in equity in the Circuit Court for Allegany County upon the theory that he and the appellant were partners with respect to the undertaking mentioned in the bill for the purchase and sale of certain land; that the partnership had never been terminated, and that the appellant had never accounted for the partnership money and assets which came into his hands. It is unnecessary to set out fully the allegations of the bill, which is quite a lengthy one. Its essential averments are that in July, 1898, the plaintiff and defendant made a verbal arrangement or agreement to purchase, deal with and sell land called the Cunningham Tract on their joint accounts, and for their joint profit, and to share equally the profits and losses arising from their joint venture, and that in November, 1898, it was further agreed that said verbal agreement and venture should extend to and include two other tracts of land called "The Maynadier Lands," all three of these tracts being located in Garrett County, Maryland; that at the time the contract was made with reference to the Cunningham Tract Morgart. proposed that he would furnish all the necessary money to run the deal to a finish, and to do all the work connected with it, and would do that in consideration of one-half of the profits to be made out of it, and on the other hand if a loss were sustained each party should bear one-half of the loss so incurred, and that this proposal was accepted by the plaintiff; that the work of carrying out said agreement was entered upon by the parties, and that they united their efforts to sell the Cunningham land at a profit for their joint account; that in November, 1898, the parties agreed that they would buy and deal with and sell for their joint profit the Maynadier land, and that their contract in reference to the Cunningham land should extend to and cover in all its details their operations in reference to the Maynadier land; that they secured an option on and control over said lands, and thereafter dealt with the three tracts under said agree-

ment.   The bill then charges that the land was sold by the
appellant, and that, after paying all the expenses attending
the transaction, there was a large sum of money left in the
hands of the appellant as net profits, and that the plaintiff
was entitled to receive one-half thereof; that the appellant
had attempted to defraud the plaintiff of his share of the
profit; and made false statements regarding the transaction;
had deceived him; and had refused to account or settle; that
all of said lands were bought and sold under and in pursu-
ance of said agreement between the parties, and it was their
intention at the time the agreement was made, and at the
time it was extended to the Maynadier lands that all the
transactions thereunder should be for the joint benefit of the
plaintiff and the defendant, and that they were to share
equally in the profits and losses.   It appears that there were
large deposits of coal on this land, and also very valuable
timber, and that the timber was sold by the defendant and
others to Jennings brothers.

The bill charges that the plaintiff called upon the defend-
ant for a settlement, and was told by the defendant that there
were no profits arising from the sale of the timber amount-
ing to anything, but that the defendant paid him the sum of
seventy-five dollars, which he said was one-half of the net
profits of that transaction; that the plaintiff afterwards dis-
covered that said statements were untrue and that the de-
fendant had deceived him; that he again demanded a settle-
ment, and that the defendant said he would make it all right
when he sold the coal; that the defendant did sell the coal
without the knowledge of the plaintiff, and kept the plaintiff
in ignorance of the fact that he had made the sale.   The bill
prayed that the appellant might be required to render an ac-
count of all money received by him from the timber and coal
covered by the contract, and to render a specific and itemized
account of all expenses incurred by him, and that he be re-
quired to pay over to the plaintiff one-half of all the net
profits received by him from the sales.   It further prayed for
a dissolution of the partnership.   The Court found that the

contract stated in the bill had been made; that they were part-
ners as to the undertaking set forth and that the partnership
between the parties had never been terminated. It dissolved
the partnership, and found that the one-half of the net profits
due to the plaintiff under the contracts to be nine thousand
and one dollars, and entered a decree against the appellant
for that sum. It is from this decree that the appeal now be-
fore us was taken.

The answer of the defendant denied all the essential facts
stated in the bill. Under the pleadings, the only real issue in
the case is one of fact. Does the evidence show that the con-
tracts alleged in the bill were made as to the Cunningham
and Maynadier lands? If it does, then, under the principles
announced in *Morgart* v. *Smouse, supra,* the plaintiff was en-
titled to recover. Upon this issue a large amount of testi-
mony was taken. We have carefully examined this testi-
mony, and we agree with the lower Court that the contracts
stated in the bill are established by the proof; that the parties
were partners as to the lands mentioned, and that the plain-
tiff was entitled to the relief prayed for.

This Court has said and repeated, that on a question of
fact depending, as this does, entirely upon the evidence no
good result can possibly arise from a recapitulation of the
evidence. It is enough for the Court to announce the con-
clusion it arrives at. *Stirling* v. *Stirling,* 64 Md. 138; *Moore*
v. *McDonald,* 68 Md. 321. There is so much testimony in
the record that would serve no useful purpose to discuss it
in detail. We will content ourselves with dealing with its
general nature and purport, and by referring to the more
prominent facts which support the plaintiff's case.

On the 20th of March, 1899, Joseph S. Bayard, S. F.
Shelley and William A. Morgart entered into an agreement
to share equally in all the profits which may be derived, over
all legitimate expenses, from the sale or from the develop-
ment of all timber and coal lands, either under conditional
purchase in fee simple or by optional lease, which might be
secured through and with the said Morgart in the vicinity of

Garrett County, Maryland. On August 10th and 11th, 1899, Bayard acquired the title to the two Maynadier tracts mentioned in the bill of complaint, embracing about thirteen hundred acres of land, and on the 17th of August, 1899, the Cunningham tract referred to in the bill, and comprising about five thousand acres, was conveyed to him, and on the same day Bayard conveyed to the Jennings Brothers for the consideration of forty-seven thousand dollars the whole property, except the coal under all the lands and one hundred acres of the surface of the Maynadier tract. In this transaction, which related exclusively to the surface and timber of the Cunningham and Maynadier land, there was realized a substantial profit. This transaction was had under the agreement of March 20th, 1899. Morgart then acquired the undivided two-thirds interests of Bayard and Shelley in the coal, in consideration of fifteen hundred dollars for each of said interests. These interests were conveyed to him in 1899, and on June 5, 1901, he sold and conveyed to William J. Blackwell, trustee, the coal and all the remaining rights in both tracts for the sum of forty-five thousand dollars. Whatever net profit was realized by Morgart in these transactions it was his duty to divide equally with the appellee. It is true that there is a flat denial in the answer and in the testimony of the appellant of the contract relied on in the bill and testified to by the appellee; but the contention of the appellee is supported by the evidence of other witnesses and by a number of facts and circumstances appearing in the record. This evidence is strongly corroborative of the testimony of the plaintiff, and shows that an agreement, as alleged in the bill, was made between the parties. Unless the testimony of Messrs. Davis, Flick, Tower, Hamill, Shockey and Mrs. Smouse be disregarded, and we see no reason why that should be done, no other conclusion can be reached.

Mr. Shockey testified that in midsummer, 1898, in the month of July, he thought, he was at the home of the plaintiff and heard a conversation between him and the appellant about the timber. He said the conversation was relative to a

tract of timber land on which Mr. Smouse had an option; that Morgart was urging Smouse to let him in on the deal; that Smouse said that he had already arranged to take up the deal himself, but would consider Morgart's proposition; that Morgart proposed "that he would go equal partners and would furnish the necessary money and do the work and complete the sale of the coal land—the sale of the coal. In this way stated that Mr. Smouse would not need to raise any money. The arrangement between the two seemed to be coming to a completion upon the condition that Mr. Morgart would do what he proposed, and that he believed he could find buyers for the coal—that he was somewhat posted, while Mr. Smouse probably was not, in coal. The timber, however, on the land he would leave more to the judgment of Mr. Smouse. That in sum and substance possibly is the extent of the conversation, Mr. Morgart stating that the expenses taken out. the profits would be divided equally." The witness stated that he thought they arrived at a conclusion, and they proposed to go up and see the property. They were talking about the Cunningham tract in Garrett County.

Mr. Tower, who was a clerk in the office of Mr. Hamill in 1898, testified that Mr. Hamill, as trustee, offered the Cunningham tract for sale at public auction in 1897, but withdrew it because no adequate bid was received; that some time thereafter, the exact date the witness could not fix, Morgart and Smouse came to see Mr. Hamill about buying the property. The witness was in the insurance business, and, thinking that if they became the purchasers they would erect a saw mill upon the property, he solicited the insurance upon the bill; and that Morgart said "that he and Mr. Smouse would not hold the land if they became the purchasers, but was simply getting it as an investment;" that he understood they were partners and purchasers.

Morgart and Smouse went up from Cumberland to Oakland on the 30th of July, 1898, to see Mr. Hamill about the property. Mrs. Smouse, who went with them, testified that Morgart "came over where I sat, and he said Mr. Smouse was

taking him to Oakland to go into a deal with him that would make big money for both of them."

The plaintiff testified that the defendant reported to him that there was about a thousand dollars' profit on the timber; but after deducting his expenses there would not be over four hundred dollars; that the defendant paid him seventy-five dollars on account, and told him he would pay him the balance from the sale of the timber, and that he would not get anything further until the coal was sold; he said the coal had cost him seventeen thousand dollars, and he did not know whether that was all it was going to cost, but as soon as it was all fixed up he would come down and settle.

Mr. Flick testified that he was present at a conversation between Morgart and Smouse, in which Morgart said to Smouse: "In this deal you will make more money than you ever made in the lumber business in your life. Addressing my conversation to Mr. Morgart, I asked him 'where is this?' He said, 'right out here in Maryland.' I said, 'What part of Maryland?' He said, 'Up in Garrett county.' "

The defendant admits that he paid the plaintiff seventy-five dollars and promised to pay him twenty-five dollars more; but he said he did this "as a mattter of consolation to the plaintiff." This explanation is not satisfactory. We think this payment, under all the facts and circumstances of the case, is a recognition of the plaintiff's rights in the proceeds of the sale. The evidence abundantly shows that the defendant withheld the extent of those rights from the plaintiff. It is unnecessary to make further reference to the evidence, as we quite agree with the conclusion reached by the lower Court, "that there was such a contract or agreement entered into between the plaintiff and the defendant as constituted them partners in the deal," and that the plaintiff is entitled to the relief prayed.

The remaining question is: "What is the amount due by the appellant to the appellee?" The lower Court, as we have seen, found this to be nine thousand one hundred dollars. It ascertained that amount in this way. It charged the appel-

lant with $3,982 received from the sale of the timber, and
credited him with $830 for expenses paid. This deducted,
left a balance of $3,152, which the Court found to be the
net profit from the sale of the timber, and of which sum the
plaintiff was entitled to one-half, or $1,576. From this it
deducted the $75 paid, leaving the amount due from this
source ˙$1,501. The Court charged the appellant with
$15,000, being on-third of the total sum for which the coal
was sold. The Court found the plaintiff to be entitled to
one-half of this, or $7,500. By this method the result reached
was as follows:

One-half of net profit from sale of timber.....$1,501.00
One-half of net profit from sale of coal........ 7,500.00

Total                           $9,001.00

the amount fixed by the decree.

We think the learned judge fell into an error in fixing
this amount. The evidence shows that the defendant was en-
titled to a much larger credit for expenses. Nearly two years
intervened between the sales to Jennings Brothers, and the
sale of the coal lands to Blackwell, trustee, and the evidence
shows that quite a substantial sum was paid by Morgart in
the effort to develop and dispose of these lands. He was
charged with the full value of one-half of the coal; but was
allowed nothing for expenses incurred by him in the develop-
ment and sale of the coal. He testified that he had spent
twelve or fifteen hundred dollars in connection with the
timber, and about two thousand dollars cash on the coal land
in "improving it and for experts in developing it." He said
that most of this money was paid to experts, to Mr. Taylor
of Pittsburg and to H. C. Yerger of Patton, Pennsylvania;
and that on one occasion he paid Yerger five hundred dollars.

In view of this evidence, which is undisputed, it was error
in the lower Court not to allow a larger credit to the appel-
lant. We are not to be understood as saying that the appel-
lant was entitled to be allowed the whole sum testified to by

him; but on the evidence he was clearly entitled to. a much larger credit than the Court gave him.

The decree, will, therefore, be reversed, and the cause remanded, with directions to take further testimony upon the subject of the expenses incurred by the appellant under and in connection with the contracts set forth in the bill.

> *Decree reversed and cause remanded, with*
> *costs to the appellant.*