### W. L. THOMPSON V. R. L. SCHMITT ET AL.

No. 4123.  Decided June 24, 1925.

(274 S. W., 554.)

**1.—Partnership.**

Persons who furnish capital for a mercantile business to be operated for their joint account and for their mutual profit, and to be conducted by their chosen agents, who were specially empowered to contract debts for merchandise, are partners in the undertaking and liable as such for debts so contracted by their agents.  (Pp. 60-64.)

**2.—Same—Trust.**

The sharers in profits of a mercantile business are not relieved from responsibility as partners therein by the fact that the agents to whom its entire management is committed are designated as trustees, and that the interest of the sharers contributing the capital for the enterprise comes to them as holders of stock certificates therein.  The test of partnership in an unincorporated business enterprise is the communion of profit and loss.  (P. 62.)

**3.—Cases Discussed.**

Freeman v. Huttig Sash & Door Co., 105 Texas, 571; Goode v. McCartney, 10 Texas, 193; Brinkley v. Harkins, 48 Texas, 225; Spencer v. Jones, 92 Texas, 518; Kelley Island Lime & T. Co. v. Masterson, 100 Texas, 44; Cothran v. Marmaduke, 60 Texas, 372; Miller v. Marx & Kempner, 65 Texas, 135; are discussed, approved and followed.  Connally v. Lyons, 82 Texas, 669, distinguished or disapproved.  (Pp. 60-64.)

**4.—Partnership—Trust.**

See declaration of trust establishing a mercantile enterprise to be conducted by trustees, for the benefit of those furnishing the capital and sharing the proceeds as holders of stock certificates therein, which is held to make such stockholders partners and liable for debts contracted by the trustees by virtue of the powers so conferred on them, creating the form of partnership known as a joint stock company.  (Pp. 56-67.)

**5.—Joint Stock Company Defined.**

A joint stock company is an unincorporated association creating a partnership whereof the capital is divided into shares so as to be transferrable without the express consent of the copartners.  Galveston City Co. v. Scott, 42 Texas, 553.  (P. 64.)

**6.—Same—Title to Company Property.**

See declaration of trust establishing a mercantile business, held to vest title in its capital in the trustees merely as agents of the stockholders; or at most only in a fiduciary capacity, the certificate holders being the ultimate proprietors, and entitled to remedies enforcing their rights as such. (Pp. 64, 65.)

**7.—Partnership—Management and Control.**

A valid contract of partnership may, as between the parties, vest the sole management in one partner to the exclusion of others; or, in case of a joint stock company, entrust it to officers or trustees. (Pp. 65-67.)

**8.—Massachusetts Trust.**

Holding that the trustees under the association created by the instrument of trust here considered were not, under the doctrines recognized by Texas courts, beyond effective control by certificate holders, the court decline to enter into the discussion of the so-called Massachusetts Trusts, and to consider the distinction between a trust and a partnership based on the extent to which the instrument creating the enterprise vests complete title and management in the trustees. (Pp. 67.)

**9.—Limited Partnership.**

The statutes of Texas provide for limited partnerships, securing exemption from partnership debts beyond the capital contributed to the undertaking, and making all partners not complying therewith liable personally as general partners. (Rev. Stats., Arts. 6126-6132, 6153.) The attempt here made to secure such exemption without complying with these statutes, by the creation of the trust here considered, in effect a partnership, is prohibited by our laws. The holders of stock certificates were personally liable as general partners. (Pp. 68-70.)

Questions certified from the Court of Civil Appeals for the Ninth District, in an appeal from Harris County.

*Kennerly, Williams, Lee & Hill,* and *T. M. Kennerly,* for appellant.

This declaration of trust creates a common law trust. If so, the trustees themselves are the principals, and they are not the agents of the beneficiaries. Taylor v. Davis, 110 U. S., 330; McGovern v. Bennett, 146 Mich., 558; Connally v. Lyons, 82 Texas, 665; Betts v. Hackathorn, Arkansas, 252 S. W., 602; Sears' Trust Estates (Second Edition), Section 32; Wrightington on Unincorporated Associations.

We believe the third question must be answered in the affirmative. The test seems to be whether the legal title to the trust property is in the trustees, and whether shareholder, or holders of certificates of beneficial interest, hereafter referred to as beneficiaries, have any authority or direction over the trustees. Connally v. Lyons, 82 Texas, 664, 18 S. W., 799; Morehead v. Bank, 243 S. W., 547; Crocker v. Malley, 249 U. S., 223; Feldman v. Telegraph Co., 257 S. W., 929; Henderson v. Scott Oil

& R. Co., 258 S. W., 1083; Williams v. Milton, 215 Mass., 1. Cases from many jurisdictions in the United States either expressly or impliedly uphold the legality of a common law business trust. Note to Malley v. Bowditch, 7 A. L. R., 1613; Connally v. Lyons, 82 Texas, 664; Gamble v. Dabney, 20 Texas, 69; Nunn v. Titche-Goettinger Co., 245 S. W., 421; Sergeant v. Goldsmith D. G. Co., 110 Texas, 482; Morehead v. Bank, 243 S. W., 547; Webster & Sons v. Utopia Confectionery, 254 S. W., 123; Bingham v. Graham, 220 S. W., 105; Davis v. Hudgins, 225 S. W., 77; Head v. Porter, 240 S. W., 685; Phoenix Oil Co. v. McLarren, 244 S. W., 833; Geiselman v. Anderson, 242 S. W., 799; Fisheries Co. v. McCoy, 202 S. W., 343; Industrial Lbr. Co. v. Texas Pine Land Association, 72 S. W., 876; Williams v. Milton, 215 Mass., 1; Hoadley v. County Commissioners, 105 Mass., 519; Gleason v. McKay, 134 Mass., 419; Whitman v. Porter, 107 Mass., 522; Phillips v. Blatchford, 137 Mass., 510; Ricker v. American Loan and Trust Company, 140 Mass., 346; Mayo v. Moritz, 151 Mass., 481; Hussey v. Arnold, 185 Mass., 202; Frost v. Thompson, 219 Mass., 365; Horgan v. Morgan, 233 Mass., 381; Priestly v. Treasurer, 230 Mass., 452; In Re Associated Trusts, 222 Fed., 1012; Smith & Anderson, 15 Ch. Div., 247; Cox v. Heckman, 8 H. L. C., 268; Home Lumb. Co. v. Hopkins, 190 Pac., 601.

*W. P. Neblett,* for appellees.

The declaration of trust of the Dixie Co-operative Mail Order House (not incorporated), as interpreted by and under the laws of Texas, created a joint stock association whose members, or stockholders, were personally liable for its debts. McCamey v. Hollister Oil Co., 241 S. W., 689; Rev. Stats., Arts. 6149, 6151, 6153, 6154; Wells v. Mackay Tel. Co., 239 S. W., 1001.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Certified questions from the Honorable Court of Civil Appeals of the Ninth Supreme Judicial District of Texas, in an appeal from the County Court of Harris County.

The facts to be considered in determining the questions certified to the Supreme Court may be briefly stated as follows:

Appellees sued appellant as the holder of certificates of beneficial interest in the Dixie Co-Operative Mail Order House, an association operating in this State under a declaration of trust, to recover the amount of a verified account for goods sold the house or the trustees thereof.

Appellant denied under oath that the Mail Order House was a joint stock association or a partnership, setting out all the provisions of the declaration of trust under which the business done in the name of the house was conducted, and claimed that said provisions exempted him from liability to appellees.

The County Court of Harris County rendered judgment for appellees against appellant for the amount of the account, and the appeal from that judgment is pending in the Court of Civil Appeals.

The case was tried on an agreement as to facts in substance as follows:

FIRST: It is agreed that appellees, R. S. Schmitt and son, Roy E. Schmitt, are a co-partnership doing business under the name of R. S. Schmitt & Son, in the City of Houston, Harris County, Texas, and that the sworn account sued upon was entered into by and between R. S. Schmitt & Son and the Dixie Co-operative Mail Order House (not incorporated), and that said merchandise was purchased by the trustees in their official capacity, and sold in the ordinary course of trade, and is a true and correct account and is unpaid.

SECOND: It is agreed that the defendant, W. L. Thompson, was at the time, before and since the obtaining of said merchandise, a holder of certificates of beneficial interest in the said Dixie Co-operative Mail Order House (not incorporated), and that the said Dixie Co-operative Mail Order House (not incorporated) is a bankrupt and became bankrupt soon after the purchase of said goods.

THIRD: It is agreed that the Dixie Co-operative Mail Order House (not incorporated) was engaged in the buying and selling of merchandise under a declaration of trust filed for record May 28th, 1919, and recorded on May 30th, 1919, in Vol. 420, page 633, Deed Records, Harris County, Texas, and a purported amendment thereto, recorded in Vol. 460, page 560, Deed Records, Harris County, Texas.

By the declaration of trust, Charles H. Steding, Louis Minck, and H. A. Speed of Harris County agreed as between themselves and with all other persons who might afterwards become interested, as follows:

The purpose of the association, called "this trust" was "the purchase and sale, at either wholesale or retail, or both, of goods, wares and merchandise, and other similar personal property, and to carry on and conduct a business for the purchase and sale as aforesaid of goods, wares and merchandise and other similar

personal property, under the general plan commonly known as a mail order business, with the right at any time, and from time to time, to acquire, hold, use, sell and convey, or otherwise dispose of, such property and/or any other character of property real, personal, or mixed, as may seem to the trustees provided for herein to be necessary or advisable in the conduct and carrying on of said business, including the collection of any indebtedness that may be owing to this trust."

The capital to carry on the business of the association was to come from the issuance and sale by trustees of transferable certificates of beneficial interest in an aggregate amount not to exceed two million dollars, each certificate to have a par value of one dollar.

The business of the association was to be conducted by Steding, Minck, and Speed, and their successors, as trustees. The title to all property of the association was to vest in these named individuals and their successors, in trust for the holders of the certificates of beneficial interest. The articles expressly granted to the trustees complete power and authority to do business under the name of "Dixie Co-operative Mail Order House (not incorporated)" to buy and sell merchandise, to contract debts, and to manage and control and dispose of anything and everything to be acquired under the articles' terms. The trustees were empowered to declare and pay dividends to the holders of certificates of beneficial interest at any time sufficient cash or securities were in their hands and the trustees deemed it advisable.

The articles granted to the holders of certificates of beneficial interest the right to inspect an accurate record of all receipts and disbursements to be kept by the trustees, the right to receive dividends, and on termination of the association the right to have a division of principal and accumulated profits in the trustees' hands.

The articles explicitly provided that all contracts, debts and obligations incurred by the trustees should be entitled to payment out of the property in their hands, but that "the holders of said certificates shall not at any time be personally or individually liable for the payment of any indebtedness incurred by the trustees hereunder, nor for performance of any obligations entered into by the trustees hereunder, nor for the torts of the trustees or the trust estate or their or its officers, agents, or employes. The trustees hereunder shall not at any time be personally or individually liable for the payment of any indebtedness incurred by them hereunder, nor for the performance of any

obligations entered into by the trustees hereunder nor for the torts of the officers, agents, or employes of this trust estate or the trustees. And the trustees shall, in each case in executing notes, deeds of conveyance or other instruments of writing of any character, specially stipulate that neither the holders of said certificates nor said trustees shall at any time be so held personally or individually liable."

The association was to continue until May 1, 1936, unless sooner dissolved by the trustees, with the written consent of four-fifths in amount of outstanding certificates of beneficial interest. By an amendment, the association was to continue for twenty-one years after the death of the named trustees, unless incorporated by vote of four-fifths of the trustees or unless dissolved by the trustees with the written consent of four-fifths in amount of the outstanding certificates.

FOURTH: It is agreed that W. L. Thompson was the owner of a building at 2200 Washington Avenue, in the City of Houston, Harris County, Texas, and was such owner at the time the Dixie Co-operative Mail Order House (not incorporated) was organized and became a tenant therein, in the year 1919, but that the said W. L. Thompson did not have any control over, nor participate in any manner whatsoever in the management or conduct of the business of the company in its affairs and exercised no management or control over the trustees or the trust property other than as landlord and tenant, and that the trustees had the legal title to the trust property. Immediately before the company was declared a bankrupt, the various creditors of the concern took charge of the business and placed it in the hands of Retail Men's Credit Association of Houston. At the same time, the acting trustees of the company executed an agreement as to the amount of rents then owing to the defendant, W. L. Thompson, showing balance due him of $3,120.00.

FIFTH: It is agreed that the defendant, W. L. Thompson, attended a meeting of creditors and holders of certificates of beneficial interest in the Dixie Co-operative Mail Order House (not incorporated), at which the question of re-organization of the company was discussed, prior to the time of bankruptcy and at the time they were in a failing condition, and it is agreed that the defendant, W. L. Thompson, did not attend any meeting of the trustees of the Dixie Co-operative Mail Order House (not incorporated) or of the holders of certificates of beneficial interest.

SIXTH: It is agreed that the meeting attended by W. L.

Thompson was held after the accounts were incurred upon which this suit is based, and that prior to the dates contained in said account, W. L. Thompson did not attend any meeting of the trustees or holders of certificates of beneficial interest, if such were held.

SEVENTH: It is agreed that the plaintiffs, R. S. Schmitt and Son, did not file any claim with the Referee in Bankruptcy or make any other effort, than is made in this suit, to collect the account herein sued for, but that suit was entered for the said account before the company was declared a bankrupt.

EIGHTH: It is agreed that the defendant, W. L. Thompson, never was at any time a trustee of the Dixie Co-operative Mail Order House, and never attended a meeting of the trustees, nor a meeting of the holders of certificates of beneficial interest, in that concern, except as above stated.

NINTH: It is agreed that the defendant, W. L. Thompson, at no time authorized any trustee, agent or employe of the Dixie Co-operative Mail Order House to purchase bread or other merchandise from R. S. Schmitt & Son.

TENTH: It is agreed that the defendant, W. L. Thompson, never at any time appointed anyone connected either as trustee or holder of certificates of beneficial interest in the Dixie Co-operative Mail Order House as his agent, and that in the relationship of landlord and tenant, he conducted his own affairs and made his own collections of the rents.

ELEVENTH: It is agreed that the defendant, W. L. Thompson, was not an organizer of the Dixie Co-operative Mail Order House, but that he did hold certificates of beneficial interest in the same, to the amount of approximately $1,500.00.

TWELFTH: It is agreed that the defendant, W. L. Thompson, had no knowledge of the purported amendment to the declaration of trust and did not attend by proxy or otherwise the alleged meeting taking such action.

THIRTEENTH: It is agreed that neither the plaintiffs nor the defendant, W. L. Thompson, had any knowledge that the trustees were acting under any other power except the original declaration of trust and complying with all its terms.

Re-arranging the certified questions in logical order, they are:

FIRST QUESTION: "Does the declaration of trust and/or amendments thereto of the Dixie Co-operative Mail Order House, when viewed in the light of the facts hereinbefore set forth, constitute a partnership?"

SECOND QUESTION: "Does the declaration of trust and/or

amendments thereto of the Dixie Co-operative Mail Order House, when viewed in the light of the facts hereinbefore set forth, constitute a joint stock association?"

THIRD QUESTION: "Does. the declaration of trust and/or amendments thereto of the Dixie Co-operative Mail Order House, when viewed in the light of the facts hereinbefore set forth, constitute a common law trust, or Massachusetts trust as sometimes called, similar to, or such as is referred to, in the case of Williams v. Milton, 215 Massachusetts, page 1?"

FOURTH QUESTION: "By the adoption of the common law in Texas, were so-called common law trusts, sometimes called Massachusetts trusts, thereby recognized and made lawful in Texas?"

FIFTH QUESTION: "Does the Constitution and/or Statutes of Texas, and particularly Articles 6126 to 6154, inclusive, of the Revised Statutes of 1911, respecting limited partnerships and joint stock associations, prohibit the formation and operation of common law trusts in Texas?"

SIXTH QUESTION: "Is appellent, by reason of having been the owner of Certificates of Beneficial Interest in said Dixie Co-operative Mail Order House, liable, under such declaration of trust, and/or amendments thereto, and under the facts herein before set forth, to appellees for the value of the merchandise purchased by said Dixie Co-operative Mail Order House, or its trustees, from appellees?"

Looking to the substance of the written articles and disregarding mere form, we see no escape from the conclusion that the holders of certificates of beneficial interest were persons who were to furnish capital for a mercantile business to be operated for their joint account and for their mutual profit, and to be conducted by their chosen agents, who were specially empowered to contract debts such as that sued upon by appellees. An unbroken line of decisions of this court declares in unmistakable terms that such persons are members of a partnership and cannot escape liability as partners for a debt to a third person contracted for their benefit and by their authorization.

As late as 105 Texas, at pages 571, 572, in the case of Freeman v. Huttig Sash & Door Company (Ann. cases, 1916e, 446, 153 S. W., 122), the court announced that even a tacit agreement creating a community of interest in a common enterprise, to be operated for the joint account, rendered the parties to the agreement partners, when they had a right to share in anticipated profits of the enterprise. The court there further pointed out that parties could not assume relationships which amounted to

partnerships in law without becoming liable as partners, though there was no agreement to become partners in name.

As early as Tenth Texas, the court had said that "the criterion by which to determine, in general, whether persons are partners or not is to ascertain whether there is a communion of profit and loss between them." Goode v. McCartney, 10 Texas, 193, 194.

Where one man furnished the money and another agreed to acquire property therewith and re-sell same, returning the money to the first man, with the profits to be equally divided between both, the transaction resulted in the formation of a partnership between the two men, according to the opinion of the court by Chief Justice Roberts in Brinkley v. Harkins, 48 Texas, 225. To the same effect are Spencer v. Jones, 92 Texas, 518, 71 Am. St., 870, 50 S. W., 118, and Kelley Island Lime & Transport Company v. Masterson, 100 Texas, 44, 93 S. W., 427.

It was again announced in Cothran v. Marmaduke, 60 Texas, 372, that a man could not defeat his liability as a partner in an enterprise to which he advanced money under agreement to share in the profits of the enterprise, where the profits themselves were property to which creditors would have a right to resort before their distribution. It is difficult to perceive how any other conclusion would have been consistent with either justice or reason.

Marx & Kempner sought to hold a husband named Miller for debts of a firm of which his wife was a partner. It was shown that the other members had recognized the wife as a partner. The court held that notwithstanding Mrs. Miller could not make a valid partnership contract, and Miller had never even attempted to make one, yet since the profits of the partnership would belong to the community, Miller was liable as a partner to a firm creditor. The ground of the decision is thus expressed by Chief Justice Willie:

"Miller could not enjoy all the advantages of a partnership without bearing its losses and becoming liable for its debts. Had no contract of partnership been signed by his wife, and had she not been known in respect to the partnership affairs in any manner whatever, and yet he had been in a position to demand an interest in the profits of the character we have stated, he would be held as a partner in the concern as to third parties, whether he contributed to the capital stock or not. He certainly cannot enjoy these profits without the corresponding liabilities merely because they are accorded to him by reason of an instru-

ment, which, though void in itself, has been recognized as valid by the party entitled to the remainder of the profits. It is not the validity of the partnership agreement, but the fact that under it a person receives the profits to which a partner is entitled that constitutes him a partner so far as third parties are concerned." Miller v. Marx & Kempner, 65 Texas, 133.

By their terms, the articles for the organization of the Mail Order House evidenced a written agreement not only between the named trustees but between all persons who were to become shareholders. By payment for, and acceptance of, a certificate of beneficial interest a person furnished a part of the capital for the conduct of a wholesale and retail mercantile business, and agreed for such business to be managed in his behalf and in behalf of his associates, by persons approved by him as suitable agents, who were empowered and directed to pay him his pro rata of anticipated profits. We have no difficulty whatever in regarding the parties by whom the business was to be managed and conducted, though denominated trustees, as actual agents of the certificate holders. All authority they possessed was delegated to them by the shareholders through their joinder in the articles either when originally executed or when subsequently adopted. Not only did the trustees exercise purely derivative power but it was exercised for and on behalf of the certificate holders. One who acts in my behalf, for my advantage, by my authority, is my agent.

As said in Farnum v. Patch, 60 New Hampshire, 328, 329, 40 Am. Rep., 313:

"As unincorporated stockholders who start a grocery by furnishing shares of its capital stock are partnership grocers, language being used in its ordinary legal sense, so the title of 'a committee' for managing the business of the grocery signifies the agency of the managers. The committee were agents, and were understood to be agents by all parties in interest; and they were not made sole principals by a lack of skill in bookkeeping that was harmless, or by acting as agents in conducting the business in a manner known and approved by every member of the firm."

The test of a partnership under the decisions of this court accords with the weight of judicial opinion.

The Supreme Court of the United States spoke through Chief Justice Marshall in saying:

"Partnerships for commercial purposes, for trading with the world, for buying and selling from and to a great number of

individuals, are necessarily governed by many general principles, which are known to the public, which subserve the purpose of justice, and which society is concerned in sustaining. One of these is, that a man who shares in the profit, although his name may not be in the firm, is responsible for all its debts." Winship v. Bank of the United States, 5 Peters, 561, 8 L. Ed., 216.

There is no substantial difference between the rule in Texas and that announced in Meehan v. Valentine, 145 U. S., 623, 36 L. Ed., 835, in these words:

"In the present state of the law upon this subject, it may perhaps be doubted whether any more precise general rule can be laid down than, as indicated at the beginning of this opinion, that those persons are partners, who contribute either property or money to carry on a joint business for their common benefit, and who own and share in the profits thereof in certain proportions. If they do this, the incidents or consequences follow, that the acts of one in conducting the partnership business are the acts of all; that each is agent for the firm and for the other partners, that each receives part of the profits as profits, and takes part of the fund to which the creditors of the partnership have a right to look for the payment of their debts; that all are liable as partners upon contracts made by any of them with third persons within the scope of the partnership business; and that even an express stipulation between them that one shall not be so liable, though good between themselves, is ineffectual as against third persons. And participating in profits is presumptive, but not conclusive, evidence of partnership."

The Supreme Judicial Court of Massachusetts recognizes that the authorities are agreed "that where persons associate themselves together to carry on a joint business for their common benefit, to which each contributes either property or services, and the profits arising therefrom are to be shared between them, the essential elements of a contract of partnership are made out." McMurtrie v. Guiler, 183 Mass., 453, 67 N. E., 358.

The following citations will suffice to support the statement of the Masachusetts Court: Mogart v. Smouse, 112 Md., 617, 77 Atl., 137; Coons v. Coons, 106 Va., 578, 56 S. E., 576; Sullivan v. Sullivan, 122 Wis., 335, 99 N. W., 1022; Roach v. Rector, 93 Ark., 521, 123 S. W., 399; Meinhart v. Draper, 133 Mo. App., 50, 112 S. W., 709; Breinig v. Sparrow, 39 Ind. App., 455, 80 N. E., 37; Rowley's Modern Law of Partnership, Sec. 28; 1 Eliot on Contracts, Sec. 479.

We do not think the case of Connally v. Lyons & Company, 82

Texas, 669, 27 Am. St., 935, 18 S. W., 799, necessarily conflicts with the long line of other decisions of this court. What may be sufficient to differentiate that case from the other Texas cases herein followed is that some, if not nearly all, of the beneficiaries of the mercantile business there involved were minors, of whom the opinion observed "it will not be contended that they could be partners, although the instrument might indicate a partnership." And, besides, the district court had adjudged that the business be operated by a trustee named by the court and it was so operated when the debt sued upon was incurred. Furthermore, we cannot tell how far this court was influenced by the presumption of other and different facts having been proven on the trial than those disclosed by the report of the case, it being noted in the opinion of the commission that no statement of facts was to be found in the record. But, if the opinion of the Commission of Appeals in that case, though adopted by the Supreme Court, does conflict with the rule long and clearly established by the court's other decisions for the determination of whether a partnership exists, we would not adhere to the commission's opinion.

We answer to the "First Question" that the so-called declaration of trust, as amended, of the Dixie Co-operative Mail Order House created a partnership.

It seems plain, too, that the association formed by the writing termed a declaration of trust was that species of partnership called a joint stock company. Our answer to the "Second Question" is therefore "Yes."

Parsons defines a joint stock company as "a partnership whereof the capital is divided or agreed to be divided into shares so as to be transferable without the express consent of the co-partners." Parsons' Partnership, Sec. 435. A similar definition is quoted with approval in Allen v. Long, 80 Texas, 266, 26 Am. St.; 635, 16 S. W., 43. Chief Justice Roberts calls a member of a voluntary, unincorporated, stock association "a co-partner in a partnership in the shape of a joint-stock company." Galveston City Co. v. Scott, 42 Texas, 553.

We are urged to treat the Mail Order House as a trust instead of a joint stock company or a partnership for the reason that the articles of association vested in certain individuals title in trust to all property to be acquired, and exclusive power of control and management over such property.

So far as the title acquired by the trustees is concerned, we think the articles as a whole disclose that they held as agents

merely.  If we are mistaken, then it is certainly true, as declared by the Supreme Judicial Court of Massachusetts through Chief Justice Rugg, in Peabody v. Treasurer and Receiver General, 215 Mass., 131, 102 N. E., 436, that "while the legal title is in the trustees, their ownership is fiduciary, and the certificate holders are the ultimate proprietors of the property, which is held and managed for their benefit, and which must be divided among them at the termination of the trust.  Their rights constitute not choses in action but a substantial property right." With certificate holders occupying the relation to the property of its actual and ultimate proprietors—entitled to remedies enforcing their rights as such—we cannot assent to the doctrine that they lack anything in the way of interest in or control over the property which would warrant our refusal to consider them partners.

Despite the contrary view of eminent courts of other jurisdictions, we cannot allow the mere matter of an express delegation to certain members of a voluntary commercial association of exclusive control over the common property to convert into a trust what would otherwise be universally considered a joint stock company with the members subject to the liabilities of partners.

It must be conceded with respect to an ordinary mercantile partnership, as declared by the Supreme Court of Minnesota, that the extent to which the business shall be under the management and control of any particular partner or partners is something which is expected to be arranged by the partners themselves.  And, "the *sole* management may by agreement be vested in one partner."  McAlpine v. Millen, 104 Minn., 298, 116 N. W., 586. This seemingly evident truth was recognized by the Supreme Court of South Carolina when it said, "a valid contract of partnership may be made stipulating that one of the partners would have the management of the business *to the exclusion of all the others,* and the stipulation would be good between the parties." Price v. Middleton & Ravenel, 75 S. C., 109, 55 S. E., 158.

In an earlier case, the Supreme Court of South Carolina demonstrates that such delegation of power is characteristic of partnerships, saying:

"The ordinary elements of a partnership are a common stock, an intention to prosecute, unitedly, one or more branches of industry, and authority, power, mutually interchanged or specially delegated, to manage and control the common stock for the common benefit.  The last named feature may be regarded

as the leading characteristic of a partnership. Where property passes into a common stock by the consent of its owner, the power of control over it is necessarily modified, in order to secure the purposes of a common stock. Something must be taken away from the power of independent control that each of the several owners possessed previous to its passing into the condition of a common stock. Either the parties must interchange as among themselves equal powers over the common stock, or they must place that power of control in some specialized hand or hands. In either case the power resulting from such an arrangement is representative, its peculiar characteristic being in the nature of a power of attorney." Ross v. Izard, 7 S. C., 467 to 469.

Our Court of Civil Appeals at Galveston held that "in ordinary partnerships any member may bind the firm by acts in the course of the business, but in a joint-stock company the management of the affairs of the company may be entrusted to officers and trustees." Willis v. Greiner, 26 S. W., 859.

So, no matter how absolute and exclusive may be the powers conferred by these articles on some of the members, that does not militate against what was actually formed by the written agreement between Steding, Minck, Speed and subsequent holders of certificates of beneficial interest being a joint stock company.

Professor Williston in his work on Contracts cautions: "It must be remembered that what is nominally a trust may be in reality and in legal effect an unincorporated association or partnership, the so-called trustees being more properly designated as agents." Williston on Contracts, Vol. 1, Sec. 313, page 596. In a previous paragraph, he formulated a test of liability of members of unincorporated associations conducting business for profit in these words:

"The common law recognized no entity in such associations. The act of an officer or agent of such a society bound others, if at all, as individuals. Whether members became so bound as individuals depends on the law of agency and partnership. If the association is formed for conducting business for the purpose of profit, it is a partnership and the liability of the individual members upon the debts incurred or contracts made on behalf of the association by officers or individual members, is governed by the law of partnership. Such an unincorporated association for the transaction of business frequently follows in its organization the analogy of a corporation. Transferable certificates are issued showing the share of the holder in the com-

mon enterprise, and by-laws are adopted and officers elected as
if the association were a corporation. It is, however, a partner-
ship, and the individual members are liable, as partners, on obli-
gations incurred by the officers within the scope of their author-
ity. * * * Unlike ordinary partnerships the death of one mem-
ber of such a joint-stock association does not dissolve the part-
nership as to the survivors; nor does the transfer of shares.
Unlike ordinary partnerships also, the *control of the business is
ordinarily vested in officers or managers,* and no implied power
exists in other members to bind their associates." Williston on
Contracts, Vol. 1, Sec. 307, pages 582 and 583.

The "Third Question" inquires whether the declaration of
trust and its amendments, viewed in the light of the facts recited,
constituted a common law trust or a Massachusetts trust such
as is referred to in Williams v. Milton, 215 Mass., 1, 102 N.
E., 355.

The Supreme Judicial Court of Massachusetts states the test
for determining whether a voluntary, unincorporated associa-
tion, operated for the benefits of owners of assignable certifi-
cates, is a trust or a partnership to be "the way in which the
trustees are to conduct the affairs committed to their charge. If
they act as principals and are free from the control of the cer-
tificate holders, a trust is created; but, if they are subject to the
control of the certificate holders, it is a partnership." Frost v.
Thompson, 219 Mass., 365, 366, 106 N. E., 1010; Williams v.
Milton, 215 Mass., 1, 102 N. E., 355; Crocker v. Malley, 249 U. S.,
232, 233, 63 L. Ed., 573, 2 A. L. R., 1601. If we were bound to
apply the rule formulated in Massachusetts, as, of course we are
not, we would not hold the association under consideration to be
other than a partnership. In the first place, these articles rebut
the contention that the so-called trustees are to act as principals,
in that they are simply to exercise purely representative author-
ity—expressly delegated and carefully defined—in the sole inter-
est of those by whom it is conferred. In the next place, our law
affords too ample remedies to the certificate holders—when
treated as owners of the beneficial equitable estate—for us to
sanction the idea of the trustees being beyond effective control
by such owners. In truth, the certificate holders, by contract,
have combined their capital to carry on a joint mercantile busi-
ness as principals, and thereby secured rights not to be disre-
garded by their agents.

However, our answers to the first, second, fifth and sixth ques-
tions will completely dispose of this case, and we have neither

time nor inclination to further consider the abstract question of what might or might not be the rule for the decision of the case in a sister state.

Our answers to the fifth and sixth questions determine the validity of the controlling parts of the articles before us and render unnecessary any further answer to the fourth question. In fact, such further answer would be foreign to the case and might be well regarded as without our rightful jurisdiction.

Our statutes impose strict limitations on the right of a person to transact with others the business of buying and selling goods at wholesale or retail in Texas without liability beyond such person's contribution to the capital of the business.

The first limitation on the right is that it can be secured only when some other person also goes into the partnership, who stands obligated for all the partnership debts and who engages to transact all the partnership business. Articles 6126, 6127, 6128, Revised Statutes.

The second limitation is the registration in the office of the county clerk of the county wherein is located the partnership's principal place of business of a certificate signed, acknowledged and verified, showing the name of the firm, the general nature of the business to be done, the names and residences of the general and special partners, the amount of capital contributed by each partner, and the time for which the partnership is to last. Articles 6129 to 6132, Revised Statutes.

The statutes declare that no partnership whereby one limits his liability to his capital contribution shall be deemed to have been formed until the required certificate has been made, acknowledged, verified, filed and recorded; and furthermore, that the partnership shall be deemed general, though all these pre-requisites be complied with, until the partners have made a newspaper publication for six weeks of the terms of the partnership. Articles 6133 and 6134, Revised Statutes.

It is clear that what was done by the certificate holders in this case was to attempt to secure the very exemption from liability for the debts of the mercantile business they were providing the money to conduct which the statutes accord only to special partners in a limited partnership. They attempted to secure such exemption without procuring anyone to join them as a general partner, and in fact without compliance with a single statutory requirement. They undertook to do the precise thing the statutes were framed to prevent—which was to set up a partnership composed altogether of non-liable partners save to the extent of their respective capital contributions.

The language of Chapter 1, of Title 102, of the Revised Statutes, as a whole could hardly be plainer to fix upon each of these certificate holders liability as a general partner for the debts of the business in which they were engaged.

Article 6153 of the Revised Statutes recognizes the personal liability of the stockholders of a voluntary, unincorporated, joint stock company for all debts incurred in carrying on the business of the company, by regulating the practice with respect to enforcing such liability.

In view of the terms of our statutes, we think Justice Pleasants, for the Galveston Court of Civil Appeals, announced a sound and just conclusion, in Wells v. Mackay Telegraph-Cable Co., 239 S. W. 1006, in saying:

"Whatever may be the rule in other jurisdictions, it seems to be well settled by the decisions of our courts that, when two or more persons associate themselves together for the purpose of carrying on a business enterprise for their mutual profit, the persons so associated are jointly and severally responsible for the debts incurred in the conduct of such business unless such business association is organized as a limited partnership or a corporation under our statute providing for such organizations, or specially contracts with those with whom the association deals that only the funds and property of the association shall be held liable."

Like decisions were rendered by Courts of Civil Appeals in McCamey v. Hollister Oil Co., 241 S. W., 699; Nini v. Cravens, 253 S. W., 587; Harvey Co., Ltd., v. Braden, 260 S. W., 659.

We answer to the "Fifth Question" that Articles 6126 to 6154 of the Revised Statutes do prohibit any limitation of partnership liability to creditors in the manner shown by the facts certified.

The agreed facts which fasten on appellant the obligations of a partner to a creditor selling goods to the Mail Order House, through its authorized purchasing agents, are: first, that such agent bought appellees' goods for the House in the ordinary course of trade and have not paid for them; second, that at the time the goods were purchased appellant was the holder of certificates of beneficial interest in the House; and third, that appellees sold the goods without expressly agreeing to look only to the assets of the Mail Order House, though with knowledge of the terms of the original declaration of trust.

We have declared above that the legal effect of the articles of association was to create a partnership between the holders of

the certificates of beneficial interest in the Mail Order House; that these articles expressly authorized the manager of the business to contract the debt sued upon; and that our statutes forbid any attempt to lower the liability of the certificate holders below that of general partners. It follows that the provision of the articles is invalid which sought to create a partnership in which no one should be liable save as a limited partner. Victor Refining Co. v. City National Bank of Commerce, 115 Texas, 71, 274 S. W., 561; Industrial Lumber Co. v. Pine Land Association, 31 Texas Civ. App., 379, 380, 72 S. W., 878; West Side Oil Co. v. McDorman, 244 S. W., 167; Farnum v. Patch, 60 N. H., 327, 328, 49 Am. Rep., 313; Meehan v. Valentine, 145 U. S., 623, 31 L. Ed., 835.

The principle which operates to deny appellant exemption from liability was definitely applied by this Court to members of a voluntary, mutual insurance association, notwithstanding it was held not to be a partnership, in Sargeant v. Goldsmith Dry Goods Co., 110 Texas, 490, 10 A. L. R., 742, 221 S. W., 259. Speaking of the liability of members of voluntary business associations for debts authorized by articles of agreement which purport to prevent personal liability beyond fixed sums the court in the case said through Chief Justice Phillips:

"As to third persons dealing with the association and to whom it incurred lawful debts contracted within the powers of whatever agency it employed, that is, claimants falling within the second and third classes, the members of the association, as before stated, are jointly and severally liable as principals. They could not create an organization, give it a name, invite others to sell it supplies or render it service, for instance, for their benefit, but not as principals be liable for such debts. The association was a fiction except as the members stood behind it. They are necessarily liable for debts to third persons incurred in carrying out the purposes for which they were associated. They were the association. Such transactions enured to their joint and several benefit. They should in the same measure pay what is owing upon them."

We answer to the "Sixth Question" that appellant, by reason of being the owner of certificates of beneficial interest in the Mail Order House, is liable to appellees under the declaration of trust and under the facts as though the House had been an ordinary partnership in which appellant was a general partner.