### GRIFFING NURSERIES et al. v. TEXAS NAT. BANK OF BEAUMONT.

No. 3029.

Court of Civil Appeals of Texas. Beaumont.

Dec. 31, 1937.

Rehearing Denied Jan. 20, 1937.

Jack M. Moore, of Beaumont, for appellants.

E. L. Nall and Geo. A. Weller, both of Beaumont, for appellee.

WALKER, Chief Justice.

This was an action by the Texas National Bank of Beaumont, appellee, against Griffing Nurseries, a joint-stock association, W. C. Griffing and his wife, Nellie R. Griffing, Ralph C. Griffing and his wife, Maurine Griffing, and the Misses Wilma and Sibyl Gunter, upon a promissory note in the sum of $8,000, dated 30th day of September, 1931, with interest at 6 per cent. per annum from date, and with the stipulation for attorney's fee at 10 per cent., executed by "Griffing Nurseries, by W. C. Griffing, Pres." The theory of the petition was that Griffing Nurseries was a partnership, that all the defendants owned shares therein, and were, therefore, partners. All the defendants, except W. C. Griffing, filed pleas in abatement. The pleas of Mrs. W. C. Griffing and Mrs. Ralph C. Griffing were sustained, and no complaint is before us against that ruling. The pleas of the other defendants were overruled, and, on trial to the court without a jury, judgment was rendered jointly and severally against them for the relief prayed for. The lower court did not file conclusions of fact and law. Griffing Nurseries, Ralph C. Griffing, and the Miss Gunters perfected their appeal to this court, and have assigned error that the court erred in overruling their pleas in abatement.

The plea in abatement of Griffing Nurseries was to the effect that, as a joint-stock association, it was dissolved prior to the institution of this suit. The pleas

in abatement of the other defendants presented the issue that they did not own stock in Griffing Nurseries, and were, therefore, not liable as partners.

■ Appellants concede, under Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554, that, as organized and all during its existence as a joint-stock association, Griffing Nurseries was a general partnership, and that all persons owning stock therein occupied the relation of partners to each other.

■ The Miss Gunters were employees of Griffing Nurseries before and long after the execution of the note in issue. As a bonus, in addition to their regular salary, they were given certain shares of stock in Griffing Nurseries, which they held, claimed, and owned before the note in question was issued, and continuously thereafter, long after the execution of the note. On this statement, these appellants were partners, and the judgment of the lower court was properly rendered against them as such. It is immaterial that this stock was originally given to them as a bonus for services rendered, in addition to their regular salary. By accepting the stock, claiming it, and exercising over it acts of ownership, they made themselves members of the partnership. The following proposition of law announced in Houston Finance Corporation v. Stewart (Tex. Civ.App.) 7 S.W.(2d) 644, 647, sustains this conclusion:

"If the debt in question had existed as a charge against the Houston Finance Corporation at the time Wiley inherited his stock, he would not be personally liable thereon. However, he became the owner of said stock on July 30, 1921. The debt sued upon was not incurred until January 28, 1922. Meantime said Wiley had asserted his ownership of said stock, had been recognized as its owner by the partnership, and had received dividends thereon up to December 31, 1921. Having thus participated in the business of the partnership after he became such owner, having been recognized as such, and having claimed the benefits accruing to the partnership subsequent to the date he acquired his interest, he was, we think, chargeable also with the liabilities thereof incurred subsequent to such time. Miller v. Marx & Kempner, 65 Tex. [131] 133."

The facts of the plea of Ralph C. Griffing are as follows: On the 5th day of September, 1929, Ralph C. Griffing entered into the following contract with his father, W. C. Griffing:

"Memorandum of Agreement

"The State of Texas }
"County of Jefferson }

"This agreement entered into by and between W. C. Griffing, hereinafter known as Party of the First Part, and Ralph C. Griffing, hereinafter known as Party of the Second Part, both of Jefferson County, Texas, to-wit:

"Whereas, the Griffing Nurseries, has been duly organized under the laws of the State of Texas, and recorded in the Records of Jefferson County, Texas, as a Joint Stock Association, same being recorded on January 29, 1929, in Volume 313, page 480, the said instrument being dated December 15, 1928, effective as of July 1, 1928; and

"Whereas, the Griffing Nurseries was organized so that the Real Estate and personal property actually used for the Nursery business would show a profit or loss derived from the operation of the Nursery business, and further to induce new members of the organization to earn an interest in the Nursery business as a bonus as their ability and services warranted; and desired to so do; and

"Whereas, Ralph C. Griffing, son of W. C. Griffing, will finish his College Course at Texas A. & M. College in June, 1930, and has expressed a desire of making the Nursery business his life's work, and has shown a desire to become owner of Certificates of participation in the Griffing Nurseries Trust; and

"Whereas, W. C. Griffing is owner of Three Thousand (3000) Shares of participation in the Griffing Nurseries Trust, which he agrees to sell to the said Ralph C. Griffing for the consideration of seventy-five thousand ($75,000.00) dollars in cash, without interest, to be paid within five years from the date of this agreement, and upon the payment of which obligation, the said W. C. Griffing agrees to deliver unto the said Ralph C. Griffing, the said shares of Participation.

"Now therefore, in accordance with this transaction, W. C. Griffing has had such shares of participation in Griffing Nurseries Trust issued to Ralph C. Griffing, and in consideration of the obligation on the part of Ralph C. Griffing, he has indorsed such shares in blank to W. C. Griffing, who is to hold and control such

shares until the purchase price is paid in full, it being expressly understood that Ralph C. Griffing assumes no responsibility or obligation for the shares until he has them in his possession.

"It is understood and agreed that the Party of the First Part shall continue to control and manage the trust and will continue to use his best judgment as President and Trustee, and the Party of the Second Part is to hold Party of the First Part absolutely harmless for any acts or mismanagement.

"This Agreement signed in duplicate, this 5th day of September, 1929, A. D., at Beaumont, Texas, by and between the parties hereto, to remain in full force and effect until a mutual agreement is reached between the parties hereto.

> "W. C. Griffing
> "Party of the First Part
> "Ralph C. Griffing
> "Party of the Second Part."

In January of 1935, by mutual consent between father and son, this contract was canceled. On July 12, 1935, before this suit was instituted on the 26th day of July, 1935, W. C. Griffing dissolved Griffing Nurseries. Ralph C. Griffing had assets of very small value exclusive of the interest granted him by this contract. During the life of the contract, his salary was sometimes $200 per month, again only $100 per month. During the life of the contract, after the execution of the note in controversy, he filed an affidavit claiming to own stock in Griffing Nurseries. He never had the stock in his possession and never exercised any act of control or management over it. It is our conclusion, on the undisputed facts, that Ralph C. Griffing never acquired title to the stock involved in the contract between him and his father; that he had nothing more than a contract to purchase the stock on the consideration named. Construing the contract, the parties thereto expressly agreed that Ralph C. Griffing assumed no responsibility under the contract until he had the stock in his possession. No language of the contract bound Ralph C. Griffing to pay the $75,000, or any other sum. There was no language in the contract of sale vesting present title in Ralph C. Griffing; the express language of the contract is that W. C. Griffing "agrees to sell to the said Ralph C. Griffing." That Ralph C. Griffing may have had an enforceable contract against his father whereby he had

the right to acquire the title to three thousand shares of stock is immaterial. The determining point is that, in fact, he had no title to this stock, and therefore was not a member of Griffing Nurseries. Millers' Indemnity Underwriters v. Patten (Tex.Com.App.) 250 S.W. 154.

Griffing Nurseries was sued as a joint-stock association, and makes the point on appeal that, since it had been lawfully dissolved, appellee could not maintain an action against it in that character. We pretermit a discussion of this point. All members of the association were before the court as parties defendant, thereby bringing into court all its assets, whether it be considered a joint-stock association or a mere partnership.

It follows that the judgment of the lower court against Ralph C. Griffing must be reversed and judgment here rendered in his favor; that he go hence without day and recover of and from appellee his costs. In all other respects, the judgment of the lower court is affirmed.

In part, reversed and rendered; in part, affirmed.

## On Rehearing.

We quote as follows from appellee's motion for rehearing:

"Appellee in an effort to show this honorable court that it was in error in reversing said judgment as to appellant, Ralph C. Griffing, and in an effort to save both itself and this State additional expense and the Supreme Court additional work, respectfully requests that the court duly consider the following pertinent facts.

" 'Certificate No. 6, issued to Ralph C. Griffing June 29, 1929, for 1000 shares (transferred from W. C. Griffing to Griffing Nurseries) Certificate No. 3, June 28, 1929; transferred by Ralph C. Griffing to Griffing Nurseries January 15, 1935.'

"Certificates Nos. 7 and 8 were the same as No. 6. This is copied from the stock record of Griffing Nurseries.

"Appellant, W. C. Griffing, on cross examination, testified:

" 'Q. Didn't you cause to be recorded a declaration in the office of the county clerk of Jefferson County, signed and acknowledged by all of you setting forth that you were the parties interested in the Griffing Nurseries? Did you or did you not or you don't remember?

" 'A. We didn't at that time, but we did a year ago. It was required on a highway contract that they wanted to know the stock sales.

" 'Q. Wanted to know who owned the shares?

" 'A. Yes.'

" 'Q. You did report, during your dealings with the bank and your negotiations, that these were the stockholders?

" 'A. No, I did not.

" 'Q. But you did report, you say, to the highway department?

" 'A. Last year.

" 'Q. 1934?

" 'A. 1934.'

"The affidavit signed and sworn to by appellant, Ralph C. Griffing, was as follows:

" 'State of Texas }
" 'County of Jefferson }

" 'This is to certify that business is, and is to be, conducted and transacted in the above named County and State under the name of Griffing Nurseries, and that the true, full and correct name and postoffice address of each person conducting and transacting such business is

    W. C. Griffing, Box 3389
    Ralph C. Griffing, Box 3389
    Nellie R. Griffing, Box 3389
    Wilma Gunter, Box 3389
    Sibyl Gunter, Box 3389

all of Beaumont, Jefferson County, Texas, with business located in Beaumont, Jefferson County, Texas, to certify which we have hereunto set our hands this the 1st day of December, 1934.

    " 'W. C. Griffing
    " 'Ralph C. Griffing
    " 'Nellie R. Griffing
    " 'Wilma Gunter
    " 'Sibyl Gunter.'

" 'State of Texas }
" 'County of Jefferson }

" 'Before me, the undersigned authority, on this day personally appeared W. C. Griffing, Ralph C. Griffing, Wilma Gunter, a femme sole & Sibyl Gunter, a femme sole, known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

" 'Given under my hand and seal of office, this 1st day of December A. D. 1934.

" '(Seal) Jack M. Moore, Notary Public, Jefferson County, Texas.'

" 'State of Texas }
" 'County of Jefferson }

" 'Before me, the undersigned authority, on this day personally appeared Nellie R. Griffing, wife of W. C. Griffing, known to me to be the person whose name is subscribed to the foregoing instrument, and having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said Nellie R. Griffing, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

" 'Given under my hand and seal of office, this, the 1st day of December, A. D. 1934.

" '(Seal) Jack M. Moore, Notary Public, Jefferson County, Texas.'

"Certificate of Ownership, Griffing Nurseries, Filed 1 Day of Dec. 1934. Fred G. Hill, County Clerk, Jefferson County, Texas. By T. C. Land, Deputy.

" 'The State of Texas }
" 'County of Jefferson }

" 'I, Fred G. Hill, County Clerk, Jefferson County, Texas, do hereby certify that the above and foregoing is a true and correct copy of Certificate of Ownership, Griffing Nurseries, as the same appears on file under Number 1160 in my office.

" 'Given under my hand and seal of office this 25th day of September, A. D., 1935.

" '(Seal) Fred G. Hill, County Clerk, Jefferson County, Texas.
" 'By Curtin C. Cooper, Deputy.'

"At page 32 of the Statement of Facts is a financial statement of Mr. & Mrs. W. C. Griffing and Ralph (which the evidence identifies as Ralph C. Griffing, appellant) listing stocks and bonds valued at $291,-100.00. The schedule in support of this statement lists $150,100.00 of Griffing Nurseries stock.

"Appellant, Ralph C. Griffing, on direct examination testified:

"That the only interest he had in the Griffing Nurseries was by under the contract between W. C. Griffing, his father, and himself. The Court has quoted this contract in full in its opinion.

"Under this contract the shares were issued to Ralph C. Griffing. These same

shares were transferred by Appellant, Ralph C. Griffing, to Griffing Nurseries on January 15, 1935.

"The contract also says, 'And in consideration of the obligation on the part of Ralph C. Griffing, he has indorsed such shares in blank to W. C. Griffing, etc.' What obligation were the parties to the contract referring to? The only obligation which there could possibly be was one to purchase these shares.

"The agreement between W. C. Griffing and Ralph C. Griffing cancelling this contract appears at length at pages 41-42 of the Statement of Facts. This agreement recites:

" 'Whereas, the said second party, Ralph C. Griffing, has found it impossible to realize sufficient funds out of the profits of the Griffing Nurseries to reimburse the party of First Part, W. C. Griffing; thus paying off the obligation due the said W. C. Griffing in the sum of Seventy-five Thousand Dollars ($75,000.00); and,'

"The fourth paragraph recites that appellant, Ralph C. Griffing relinquishes his claim or promise to purchase for the cancellation of the unpaid obligation.

"The fifth paragraph recites that W. C. Griffing 'accepts full title and ownership of the said shares and hereby relinquishes all further claim to the obligation due him by second party, Ralph C. Griffing.'

"The language of the parties to this contract definitely reveals the intention that Ralph C. Griffing obligated himself to buy these shares for $75,000.00, and that he was the owner of the shares subject only to the pledge of same securing the purchase price. The shares were issued to appellant in his name; in turn, he pledged same to secure payment of the purchase price. The immediate endorsement in blank, which fact is not admitted because testified to only by interested witnesses, the fact being wholly within their knowledge. Too, we have the fact that the transfer of these shares was dated January 15, 1935.

"The Trial Court heard this evidence and reasonably concluded that appellant, Ralph C. Griffing, was the owner of these shares, subject to the pledge lien for the purchase price. No findings of fact were requested, and it is, therefore, presumed that the trial court so found.

"Ralph C. Griffing, on cross-examination, testified:

" 'A. Well, I agreed to buy it. (Talking about the stock.)

" 'Q. You don't know whether you understood that or not. In 1929, you undertook to buy 3,000 shares in the Griffing Nurseries, didn't you?

" 'A. Yes, sir, contracted to.'

"To say that the undisputed evidence shows that Ralph C. Griffing never acquired title to the stock involved is to disregard all evidence other than the contract itself. Had not Ralph C. Griffing executed a sworn statement to the effect that he was one of the persons conducting and transacting business for the Griffing Nurseries? The shares were issued to him, he asserted ownership thereto and claimed the benefits accruing to these shares had there been any. Is it not the usual procedure for the pledgee of stock to retain possession of same until the incumbrance chargeable against same is discharged and to require the pledgor to endorse same in blank? Such is not inconsistent with 'ownership' and appellee respectfully request this honorable court to consider all the evidence, believing that it will be forced to conclude that the trial court had sufficient evidence to support its presumed finding of 'ownership' in Ralph C. Griffing."

We find nothing in the testimony thus brought forward by appellee raising the issue that Ralph C. Griffing owned stock in Griffing Nurseries. The original contract between him and his father, copied in the original opinion, was never changed or modified to the least extent; all the testimony is to the effect that both of them recognized this contract as binding until it was voluntarily canceled. Not owning any stock in Griffing Nurseries, but merely having the right to purchase the stock, Ralph C. Griffing was not a partner with the stockholders. Appellee's motion for rehearing is overruled; also appellants' motion for rehearing is overruled.